## QUALITY MILK PRODUCTS CO. v. ENDOWMENT LOAN & MORTGAGE CO.

No. 23666.   Oct. 1, 1935.

Rehearing Denied Nov. 26, 1935.

Hughes & Ellinghausen and Earl Foster, for plaintiff in error.

Monnet & Savage, for defendant in error.

WELCH, J. This is a companion case to Quality Milk Products Co. v. Young, 175 Okla. 98, 51 P. (2d) 547, which was appealed from the district court of the same county.

The facts in that case are the facts here, with the additional facts that in 1928, after Mr. Young had owned the lot and building for about two years, he mortgaged the same to plaintiff to secure his debt to plaintiff, and after the trial court's decision in Milk Products Co. v. Young, supra, this plaintiff instituted suit in the superior court of the same county to enjoin the defendant, the Milk Products Company, from removing the same chattels from the building. It being the contention of the plaintiff here, as it was the contention of Young in the other case, that the machinery, apparatus, and appliances in controversy were a part of the

real estate, and, therefore, covered by the plaintiff's real estate mortgage.

The mortgage to this plaintiff contained a provision that the mortgagor should keep the taxes paid on the property covered by the mortgage. It may be assumed that the plaintiff observed the record as to tax payments made on the machinery and appliances for the years involved by the tenant owners of the same. At the time plaintiff took its mortgage the tenant owner of the chattels was in possession of the same, occupying the buildings, but with the right to remove his property from the building upon termination of his tenancy, and the record shows by the clear weight of the evidence that all of the items here involved can be removed without damage to the building itself. When the plaintiff took its mortgage, if it did not know and observe the true facts, they might have been ascertained by casual inquiry.

There is nothing to indicate that the plaintiff. when it took the mortgage in 1928, or later, intended to take a mortgage on the chattels involved, or in fact did do so, or placed any reliance on the chattels being a part of the realty, or claimed any lien on the chattels prior to this litigation. Upon the other hand, the contrary is well indicated.

Much that we said in Milk Products Company v. Young is applicable, but needs no repetition here. The criterion adopted by many courts, and by this court, for determining whether property ordinarily regarded as personal property becomes a part of the realty is the united application of the following requisites: First, by determining whether the chattel has been actually annexed to the realty or something appurtenant to the realty; second, whether the chattel is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated; third, the intention of the party making the annexation to make the chattel a permanent accession to the freehold. The rule is so stated in the syllabus in Seminole Supply Company v. Seminole Refining Co., 173 Okla. 132, 45 P. (2d) 1084. See, also, Elrick v. Reed, 113 Okla. 195, 240 P. 1045; Great Western Manufacturing Co. v. Bathgate et al., 15 Okla. 87, 79 P. 903. See, also, Jones on Mortgages (8th Ed.) vol. 1, p. 686, paragraphs 531 and 532. In that text it is also said that:

"In the more recent cases the intention with which a chattel is attached to the realty has become more and more the decisive test whether or not the chattel has become a part of the realty. Such intention may be inferred from the circumstances." (Citing authorities.)

In the same text, at page 721, paragraph 551, it is said:

"It is a settled rule of law that fixtures annexed to a freehold by a tenant for the purpose of trade or manufacture may be. removed by him at the expiration of his term, whenever the removal of them is not contrary to any prevailing practice, and the articles can be removed without causing material injury to the freehold." (Citing authorities.)

The record shows that part of the chattels involved were in fact installed by the tenant owner. A portion of the items involved were originally installed by Smith & Jones, while they also owned the building, but they had sold and conveyed those chattels to the tenant, and the building and lot to Young, all long before plaintiffs took their mortgage, so that under the facts in this case, and as between the parties to this action, the cause must be treated as if the chattels in controversy had been installed by the tenant for the purpose of trade or manufacturing, with the right to remove the same.

In Globe Marble Mills Co. v. Quinn, 76 N. Y. 23, 32 Am. Rep. 259, it was held in substance, that if the premises are mortgaged by the lessor during the existence of a tenancy, the mortgagee occupies the same position as the lessor toward the lessee; and the latter may remove fixtures erected by him whenever he could do so as against the lessor.

In Royce v. Latshaw, 15 Colo. App. 420. (2 P. 627, it was said that it is immaterial whether the mortgagee of the land had notice that the articles were trade fixtures, since he could not acquire any interest other than what the mortgagor had, and since the character of the items in controversy, and of the business carried on were sufficient to put him on inquiry.

It is not shown here that the plaintiff, Endowment Loan & Mortgage Company, had actual knowledge that the defendant tenant, the Milk Products Company, owned the machinery and equipment with the right to remove same, but unquestionably the character of the items in controversy, and of the business carried on by the tenant in possession, were sufficient to put the plaintiff on inquiry, if indeed the plaintiff desired or intended to obtain a lien on the chattels.

The trial court found that all of the items

of machinery and appliances were a part of the realty. That conclusion was erroneous because it was against the clear weight of the evidence.

The judgment of the trial court is reversed. The cause is remanded with directions to vacate the judgment heretofore rendered, and to permit the defendant to remove the chattels in controversy, to wit:

"Eight motors; 100 gallon pasteurizing vat; ice crusher; washing vat; steam turbine; can truck; 60 quart Cherry-Burrell freezer; 40 quart creamery package freezer; can sterilizer; 12 H. P. boiler; 1 York refrigerator machine, and all other miscellaneous machinery and equipment belonging to the said Quality Milk Products Company, and located in said premises, save and except the following described property, towit, line shaft fastened to ceiling and all partitions, including the wall and cork insulation in the cooling room"

—and fixing a reasonable time for such removal, and enjoining plaintiff from in any manner hindering or interfering with such removal.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.