### HALL v. WOODY et al.

No. 27045.   April 13, 1937.

Rehearing Denied June 29, 1937.

Abernathy & Howell, for plaintiff in error.

Hoyt & Stephens, for defendants in error.

CORN, J.   The plaintiff in error was plaintiff and the defendant in error was one of the defendants in the trial court. For convenience we shall refer to the parties as they appeared in the lower court. This action was commenced by the plaintiff against various defendants for the fore-closure of a mortgage upon certain real property in Oklahoma county. After judgment had been entered, but before the sale of said property, application was made by the plaintiff for a restraining order against the defendant L. A. Woody to prevent him from removing electric Frigidaire system which he claimed as personal property.

Plaintiff contends that certain boxes and certain refrigeration equipment located in the building are part of the real estate secured by the mortgage.

This original real estate mortgage was made in 1924. Plaintiff bought the mortgage and took the assignment in 1926. Dr. E. E. Norvell bought the property on June 15, 1929, and then made a renewal mortgage. These ice boxes and refrigeration equipment were placed in the building after the original mortgage was made and after it had been purchased by the plaintiff, but before the renewal mortgage was given. Woody purchased the real estate and took a separate bill of sale to the furniture and ice boxes and refrigeration equipment. At the time the renewal mortgage was given, plaintiff, Mr. Hall, not being present, was represented by his attorney, S. D. Williams, who testified in this case, and also L. L. Humphry. Mr. Williams has no interest in this matter and he testified that at the time the renewal mortgage was given he was acting in somewhat of a dual capacity in that he was representing the plaintiff, Hall, and also the defendant Norvell. The witness Williams testified that when the renewal mortgage was given, the owner, Norvell, insisted that the refrigeration system was to be considered as separate, and the witness Williams, in the presence of Mr. Humphry, Hall's agent made it a point to particularly emphasize the fact that in giving the renewal mortgage the owner and mortgagor, Norvell, did not intend to include any of this refrigeration system in the mortgage. Mr. Humphry says that he did not hear the remark made, or may have forgotten it.

The building was not so constructed, and was not intended for this particular type of refrigeration system. The system was made up of removable iceboxes, which were by joints connected with piping running down the walls and into the basement, where it was connected with the general

power unit. This power unit was not fastened to the building, but was sitting on the floor of the basement, and being of light weight and structure, it would not be difficult to remove. Any of the ice-boxes and power unit in the basement could be removed by disconnecting pipes. The system was in no way connected to the building except by straps holding the pipes in place along the walls and no damage would be done to the building by removing the same. This refrigeration system was not designed for any particular apartment, but is of a type that might be installed in any building.

There is also in evidence the conditional sales contract which Norvell gave when he purchased the refrigeration system, and which provided specifically that the same should not be considered any part of the real estate, but should be classed as personal property.

The trend of modern decisions shows that becoming a fixture or remaining a chattel is a matter of intention. Oklahoma courts are in accord with these decisions, as is seen in Seminole Supply Co. v. Seminole Refining Co., 173 Okla. 32, 45 P. (2d) 1084, in which this court says:

" 'First, by determining whether the machinery has been actually annexed to the realty, or something appurtenant to the realty; second, whether the machinery is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated; third, the intention of the party making the annexation to make a permanent annexation to the freehold'." (Great Western Mfg. Co. v. Bathgate, 15 Okla. 87, 79 P. 903.)

All the following cases agree that the intent is the proper rule for determining fixtures: Hedges v. First Natl. Bank of Pawnee, 170 Okla. 175, 39 P. (2d) 57; Lawton Pressed Brick & Tile Co. v. Ross-Keller Triple Pressure Brick Machinery Co., 33 Okla. 59, 124 P. 43; Elerick v. Reed, 113 Okla. 195, 240 P. 1045; Quality Milk Products Co. v. Young, 175 Okla. 98, 51 P. (2d) 547; Quality Milk Products v. Endowment Loan & Mortgage Co., 175 Okla. 94, 51 P. (2d) 550.

This intention was not a secret one, but was known to the plaintiff and acquiesced in by him, as is shown in the agreement that the renewal mortgage was not to cover the refrigeration system, which was found to be a fact by the trial court in the general finding of fact.

In 1 Jones on Mortgages (8th Ed.) sec. 542, p. 708, we find the following statement with reference to agreements:

"By agreement chattels may retain their character as personalty after their annexation to the land, though in the absence of such agreement they would become fixtures to the land and subject to an existing mortgage. Such an agreement binds the holder of an existing mortgage of the realty if he is a party to it. * * *"

In the case of Miller v. Struven (Cal.) 218 P. 287, the third paragraph of the syllabus reads as follows:

"Parties may, in their dealings with chattels annexed to, or used in connection with, real estate, fix on them whatever character as realty or personalty they desire, and the courts will give to the property the character which the parties have fixed upon it."

In 26 C. J. 677, it is stated:

"To be effective, the agreement need not be in writing, being in regard to personalty. * * *"

In Boeringa v. Perry (Wash.) 164 P. 773, the court made the following statement:

"Generally speaking, an agreement that chattels affixed to realty shall retain a personal character may be either in writing or parol. * * *

"In general it may be said that almost anything affixed to realty may by agreement be treated as personalty. Thus it has been held that houses and other buildings, machinery, railroad tracks, nursery stock, and indeed practically everything which before annexation was personal property may still retain their chattel character by an agreement to that effect. But the right to preserve the personal character of fixtures by agreement is limited to chattels which are attached to the realty in such a manner that they may be detached without being destroyed or materially injured or without destroying or materially injuring the realty to which they are attached. * * *

"And where one purchases an article to be annexed to the freehold which, from its character, may, after annexation, be either realty or personalty according to the intention of the parties, the giving of a chattel mortgage thereon to the seller is sufficient evidence of an intention that the fixture shall retain its character as personalty. * * *"

In 26 C. J. 727, it is stated:

"An extraneous agreement that certain articles, although annexed, shall not pass thereby, has been given effect regardless of the fact that the agreement is in no way referred to in the mortgage instrument or conveyance. Even an oral exception or

reservation of fixtures on the premises has been held effective to withdraw them from the operation of the instrument. * * *"

There are cases, however, that hold to the contrary in refusing to permit the oral exception, but we think in those cases a distinction may be drawn. For instance, see the case of Smith v. Odom, 63 Ga. 499; also see Bricker v. Whisler, 65 Ind. App. 492, 117 N. E. 550. The Smith Case, supra, says a parol understanding that the grantor retains the house on the premises was held inadmissible, it being contradictory of the deed, while a cotton gin and the running gear thereof, being capable of treatment by the parties as either realty or personalty, could be shown by parol to have been intended to be excluded from the operation of the deed. The Smith Case is perhaps a good illustration of what is meant when the courts refer to the question as being one of mixed law and facts, which they sometimes do. An oral reservation of a house, when a deed is given, would undoubtedly be determined by the court as a question of law. On the other hand, where the articles are of such nature that they may or may not be attached and it is a question of fact whether they are attached and whether they are personal property, then and in that event, it would be a question of fact.

Whether or not the refrigerating system installed in the apartment house is a fixture is determined by many courts to be a question of facts and not law. In Andrews v. First Realty Corp. (Cal.) 44 P. (2d) 628, in a case similar to this and concerning the refrigeration units in a 28-unit apartment house, the court said:

"* * * There was evidence that the house could be and had been operated without electrical refrigeration and was properly equipped for ice refrigeration. The electrical apparatus could be removed without damage and the coil was attached to the refrigeration box by four removable bolts. This is sufficient to support the finding that the equipment removed was not a fixture."

In Provident Mutual Life Ins. Co. of Philadelphia v. Smith (Wash.) 27 P. (2d) 580, the court stated:

"* * * The refrigerating cabinets and coils in the several apartments and the compressors in the basement were not structural parts of the building, and could be detached and removed therefrom without damage and with but little expense. After all, we are concerned here with 45 separate refrigerating units, placed in as many apartments, and two compressors in the basement. The tubing connecting the compressors with the cabinets was installed in the walls under a separate contract and as part of the building structure. * * *"

That court further stated:

"In the case at bar the intention of the parties, the stock type of equipment, the manner of installation, and the possibility of removal without material damage, all concur in establishing the chattel character of the equipment. Since the Frigidaire equipment always retained its chattel character, it did not become subject to the lien of the appellant's mortgage."

In another similar case, concerning five apartments in which the compressor and motor sat in the cellar and were unattached, the controls were on the cellar wall, the pipes running through holes in the floors to the boxes, and shelving was put in to fit the boxes, the court in Stiebel v. Beaudette Graham Co. (Mass.) 175 N. E. 267, said:

"* * * The pipes were an essential and integral part of the installation of the refrigeration system; they do not appear to have been incorporated into and become a part of the real estate; and they partake of the nature of the compressor with its motor and the refrigerating boxes. The bare fact that these pipes passed through holes bored into the floors without other attachment to the buildings in conjunction with all the other facts is not enough to require a ruling as matter of law that they had become a part of the real estate. * * *"

These cases show that where the refrigerating systems have been put in after the apartments have been built and in such a way that the whole system can be removed, they are considered as personalty even when there has been no agreement or expressed intent that they should remain so. They also show that where they have been built into the apartments, the machinery and boxes are considered as personalty and the tubing or pipes as part of the realty.

In Andrews v. First Realty Corp., supra, the court said:

"* * * It is the duty of this court on appeal to view the evidence in the light most favorable to the respondent; and if we find any substantial evidence to sustain the findings of the trial court it is our duty not to disturb such findings."

After a study of the cases we have cited, we are convinced that this is a case which cannot be decided strictly as a matter of law in determining whether these articles are personal property or real estate, but that it is necessary to decide the matter

from a standpoint of facts, taking into consideration all the circumstances, the attitude of the parties, their action concerning the same, and these facts: That the building was not constructed for these particular articles; that said articles can be used in any other property; that if there is any attachment, it is so slight as to be negligible; that this property was operated as an apartment house without such articles, and could be operated again; that many such apartment houses do not have refrigeration systems; that it could be removed without material damage, if any damage at all, to the building; that it is not an integral part of the building; that Norvell, at the time he bought the property, bought it on credit and signed a conditional sales contract under the terms of which it was to be considered as personal property; that the defendant Norvell gave a bill of sale to the articles and warranted his title to the same and obligated himself thereby; that when the plaintiff bought the mortgage originally he did not rely upon these articles as security for his mortgage; that the plaintiff will not have suffered any loss that was his or anticipated by him when he bought the mortgage; that it would not be difficult to remove the property, it being not extremely heavy in weight; and all of the facts offered in evidence and any other facts which would be apparent by a personal inspection of the property and the articles themselves.

Judgment of the trial court affirmed.

OSBORN, C. J., and RILEY, PHELPS, and HURST, JJ., concur.